UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

DENA LENARD,                                              :

                                    Plaintiff,           :        08 Civ. 10560 (JPO) (DF)

               -against-                                 :        **REPORT AND
                                                                  RECOMMENDATION**

DESIGN STUDIO and ROSE C. CHRISTO                        :
a/k/a ROSEDA DESORDES,
                                                         :

                                    Defendants.          :
------------------------------------------------------------------------X

**TO THE HONORABLE J. PAUL OEKTEN, U.S.D.J.:**

        This matter is before this Court for a damages inquest on a default judgment entered in

favor of plaintiff Dena Lenard ("Plaintiff") against defendants Design Studio Inc. ("Design") and

Rose C. Christo a/k/a Roseda Desborder ("Christo") (collectively, "Defendants"), on Plaintiff's

claims for breach of contract, negligence, fraud, deceptive trade practices, and conversion of

property.  (*See* Dkt. 8.)  For the reasons set forth below, this Court finds that, regardless of any

liability established by Defendants' default, Plaintiff's submissions to this Court are wholly

inadequate to support her damages claims, and I therefore recommend that no damages be

awarded.

## BACKGROUND

**A.      Factual Background**[1]

        Plaintiff resides in New York, in a cooperative apartment that she owns (Apt. 22-D, or

the "Apartment"), located at 504 Grand Street, New York, New York 10002 (the "Building").

---

[1] Except as otherwise noted, the facts set forth herein are taken from Plaintiff's
Complaint (Complaint, dated Nov. 26, 2008 ("Compl.") (Dkt. 1)), the allegations of which are
accepted as true as a result of Defendants' default (*see* Discussion *infra* at Section I).

(Compl. ¶¶ 1, 9; *see also* Plaintiff's Proposed Findings of Fact, dated June 7, 2010 ("Proposed Findings"), at 1[2] (stating that Plaintiff resides at 504 Grand Street, Apt. 22-D).)  Defendant Design is a New Jersey corporation.  (*Id.* at ¶ 2.)  Defendant Christo is a resident of New Jersey and is the majority shareholder of Design.  (*Id.* at ¶ 3.)

Plaintiff alleges that, on or about November 20, 2006, she received a proposal from Defendants offering to provide general contractor services for a project to renovate the Apartment (the "Renovation Project").  (*Id.* at ¶ 7.)  At all relevant times, Defendants represented to Plaintiff that they were "licensed to act as a general contractor to install heating, air-conditioning, plumbing, electrical systems, and to perform general contractor work," including the full renovation of the Apartment.  (*Id.* at ¶ 6.)  Plaintiff accepted Defendants' proposal, purportedly entering into a contract with Defendants (the "Contract"), on or about November 20, 2006.  (*Id.* at ¶ 8.)  As described by Plaintiff, the Contract required Defendants

> to install, supervise, and manage the installation of an electrical, heating, plumbing, and/or air-conditioning system and engage in the renovation of the [Apartment] subject to stock certificate, proprietary lease, house rules, and the City of New York's Building Code Rules and Regulations that would be suitable for the operation of the [Apartment].

(*Id.* at ¶ 9.)

Plaintiff claims that she fully performed all promises and conditions under the Contract (*id.* at ¶ 10), but that Defendants negligently failed to exercise ordinary and reasonable care and skill in planning, designing, supervising, and managing the Renovation Project, and thereby breached the Contract (*id.* at ¶ 21).  Further, Plaintiff alleges that, after negligently executing the Renovation Project, Defendants abandoned the project and returned none of the money that

---

[2] The pages of Plaintiff's Proposed Findings are not numbered, but this Court has assigned them numbers for ease of reference herein.

Plaintiff had paid to them under the Contract.  (*Id.* at ¶ 11.)  Plaintiff describes the work performed by Defendants on the Apartment as "grossly inadequate."  (*Id.* at ¶ 21.)  She also claims that Defendants intentionally misrepresented their ability to renovate the Apartment, their ability to perform the requisite construction and electrical tasks, and their willingness to complete these tasks.  (*Id.* at ¶¶ 28, 31.)  Although she provides no details, Plaintiff also asserts that Defendants have misrepresented their abilities as general contractors to other property owners and have failed to complete other construction projects.  (*Id.* at ¶ 32.)

The Complaint alleges that the Building's Cooperative Board (the "Board") cited Plaintiff for "several violations" that were the result of Defendants' negligent execution of the Renovation Project, and also required her to hire a contractor and electrician to repair Defendants' work and complete the Renovation Project.  (*Id.* at ¶¶ 12, 13.)  Plaintiff claims that she paid the substitute contractor and electrician a total of $50,000 to complete the necessary work, and that she also paid an attorney $10,000 in legal fees to resolve issues with the Board that were related to the violations.  (*Id.* at ¶¶ 13, 14.)  Plaintiff further claims that, as a result of Defendants' negligent execution of the Renovation Project, she was constructively evicted from the Apartment for 21 months.  (*Id.* at ¶ 15.)  During that period, Plaintiff could not sublet the Apartment (*id.* at ¶ 19), and, although she does not break down these figures, she claims, in her Complaint, that she spent a total of $105,000 ($5000 per month for 21 months) on "carrying costs" for the Apartment and "alternate housing" (*id.* at ¶¶ 16-18).  Finally, Plaintiff alleges that Defendants failed to return cabinet hardware to her, including "original latches and catches circa 1929," all of which, she claims, had been "professionally re-chromed."  (*Id.* at ¶ 35.)

In her Complaint, Plaintiff asserts claims against Defendants for: (1) breach of contract, (2) negligence, (3) fraud, (4) deceptive trade practices, and (5) conversion of property.[3]   In her Proposed Findings, Plaintiff states that she is entitled to the following damages:

(1)     $54,000 in fees that she paid to Defendants under the Contract, plus interest at a rate of 9% per year;

(2)     $62,259.14 in fines that the Board levied against her for building code violations;

(3)     $84,000 in lost rental income for the 21 months that she was constructively evicted from the Apartment, a sum that she states is "inclusive" of the mortgage and maintenance payments that she made for the Apartment during that time period;

(4)     $88,000 in lost rental income for a period of an "additional" 22 months, during which Plaintiff was allegedly prohibited by the Board from subletting the Apartment;

(5)     $10,000 for Defendants' conversion of 10 pieces of antique cabinet hardware;

(6)     $7,500 in legal fees that she paid to an attorney to prosecute this case; and

(7)     $1,984 in fees that she paid to an attorney "for negotiations with the Board of Directors."

(Proposed Findings at 4-5.)

---

[3] Although Plaintiff's Proposed Findings regarding damages refer only to her claims for breach of contract, "misrepresentation and fraud," and conversion of property (*see* Proposed Findings at 3-4), the Court will nonetheless consider the adequacy of Plaintiff's pleading and her damages demands as they relate to each of the claims asserted in the Complaint, and will not deem any of those claims to have been abandoned on this inquest.  *See Nwagboli v. Teamwork Transp. Corp.*, No. 08 Civ. 4562 (JGK) (KNF), 2009 U.S. Dist. LEXIS 121893, at *7 n.1 (S.D.N.Y. Dec. 7, 2009) ("To the extent the plaintiffs' inquest memorandum does not set forth all the claims raised in the complaint, the Court will not consider unasserted claims to be abandoned.") (citing *Homkow v. Musika Records, Inc.*, No. 04 Civ. 3587 (KMW) (THK), 2008 U.S. Dist. LEXIS 14079, at *15-18 (S.D.N.Y. Feb. 26, 2008)), *report and recommendation adopted in an unreported order* (S.D.N.Y. Mar. 9, 2010).

B.    **Procedural History**

Plaintiff commenced this action by filing her Complaint in December 2008.  (Dkt. 1.)

When, after being served with process, Defendants failed to respond to the Complaint, the Court

(Holwell, J.) entered a default judgment against them, as to liability, and referred the matter to

this Court to determine the appropriate amount of damages and attorneys' fees, if any, to be

awarded.  (Dkt. 8.)  This Court then issued a Scheduling Order for submissions for a damages

inquest (Dkt 11), and, upon Plaintiff request for an extension of time, the Court issued an

Amended Scheduling Order (Dkt. 11).  In both the Court's original and amended Scheduling

Orders, the Court expressly informed Plaintiff that she should submit proposed findings of fact

and conclusions of law, which

> should specifically tie the proposed damages figure(s) to the legal
> claim(s) on which liability has now been established; should
> demonstrate how [P]laintiff has arrived at the proposed damages
> figure(s); and should be supported by an affidavit attaching as
> exhibits and containing an explanation of any documentary
> evidence that helps establish the proposed damages.

(Dkt. 10, at ¶ 2; Dkt. 11, at ¶ 2.)  The Court's Amended Scheduling Order required Plaintiff to

serve and file her submission no later than June 21, 2010.  (*See* Dkt. 11, at ¶ 1.)

On June 21, 2010, Plaintiff delivered her Proposed Findings to my chambers, although

she apparently did not file them.[4]  The Proposed Findings are in the form of an attorney

declaration, with attached exhibits.  (*See id*.)  The submission, titled only "Proposed Findings of

Fact," does not contain a single legal citation.  Moreover, Plaintiff's submission does not include

any affidavit or declaration by any person with knowledge of the underlying facts.  In addition,

the submitted attorney declaration contains minimal, if any, explanation for the documentary

---

[4] The Court has undertaken to docket this submission, and it is now reflected on the
Court's Docket.  (*See* Dkt. 14.)

evidence attached as exhibits, and, as discussed below, much of that evidence is sparse, is not self-explanatory, and does not appear to support the claimed damages figures.

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

Although "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages.  *Bambu Sales*, *Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In conducting a damages inquest, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages.  *See Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to establish damages with reasonable certainty").  While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord*

6

*Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").  Where, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs.  *See, e.g.*, *Garden City Boxing Club, Inc. v. Hernandez*, No. 04 Civ. 2081 (LAP) (DF), 2008 U.S. Dist. LEXIS 115454, at *5 (S.D.N.Y. Oct. 15, 2008) (determining the adequacy of the plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing with respect to damages), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 95503, at *2 (S.D.N.Y. Nov. 19, 2008).

Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default.  *See Griffiths v. Francillon,* No. CV 10-3101 (JFB) (GRB), 2012 U.S. Dist. LEXIS 54681, at *2 (E.D.N.Y. Jan. 30, 2012 ) (recommending that no damages be awarded because motion papers alone were insufficient to support an award of damages), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 54683, at *3 (E.D.N.Y. Apr. 13, 2012); *Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exch.,* No. CV 10-2837 (JFB) (WDW), 2011 U.S. Dist. LEXIS 153153, at *14-15 (E.D.N.Y. Aug. 10, 2011) (finding that "Complaint and plaintiff's papers in support [were] woefully inadequate to support any monetary relief," and thus recommending that neither profits nor damages be awarded), *report and recommendation adopted,* 2012 U.S. Dist. LEXIS 17655, at *3 (E.D.N.Y. Feb. 10, 2012); *Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc.*, No. CV 07-0608 (RJD) (JO), 2009 U.S. Dist. LEXIS 124326,

7

at *38-39 (E.D.N.Y. Mar. 19, 2009) (finding that plaintiff failed to establish that it was entitled

to any damages by virtue of defendant's liability for negligent and intentional misrepresentation,

or breach of contract, and recommending that the court award no damages to plaintiff for these

claims), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 32253, at *1 (E.D.N.Y.

Apr. 15, 2009).

## II.   ADEQUACY OF PLAINTIFF'S PLEADED CLAIMS

Without a response from Defendants, this Court must first determine whether the

allegations in Plaintiff's Complaint are sufficiently pleaded to establish Defendants' liability.

*See Bambu Sales, Inc.*, 58 F.3d at 854 (stating that "[a] default judgment entered *on well-pleaded*

*allegations* in a complaint establishes a defendant's liability" (citation and internal quotation

marks omitted; emphasis added)); *see also PSG Poker, LLC v. DeRosa-Grund*, No. 06 Civ. 1104

(DLC) (JCF), 2008 U.S. Dist. LEXIS 59214, at *7 (S.D.N.Y. July 14, 2008) ("Where an inquest

is conducted following a default judgment, it is generally necessary for the Court to determine

whether the allegations of the complaint, taken as true, are sufficient to establish the defendant's

liability."), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 62379, at *1 (S.D.N.Y.

Aug. 15, 2008).

Here, as discussed further below, the allegations of Plaintiff's Complaint, taken as true,

are sufficient to establish Defendants' liability for breach of contract under New York law,[5] but

---

[5] Plaintiff's Proposed Findings are entirely silent on the issue of choice of law; in fact, Plaintiff cites no law whatsoever in her submission. Defendants are also silent on the subject, having filed no response to Plaintiff's submission. Under the circumstances, it is appropriate for the Court to apply New York law – the law of the forum state – to Plaintiff's state-law claims. *See Global Switching Inc. v. Kasper*, No. CV-06-412 (CPS), 2006 U.S. Dist. LEXIS 44450, at *32 n.10 (E.D.N.Y. June 29, 2006) ("[W]here, as here, the parties are silent about the choice of law question, the Court may apply the law of the forum.") (citing *Michele Pommier Models v. Men Women N.Y. Model Mgmt.*, 14 F. Supp. 2d 331, 336 (S.D.N.Y. 1998)).

Plaintiff's allegations are not sufficiently "well pleaded" to establish Defendants' liability on Plaintiff's other claims.

### A.      Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege four elements:  (1) the existence of a contract; (2) the performance of that contract by one party; (3) the breach of that contract by the other party; and (4) damages.  *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  In this case, Plaintiff has pleaded, first, that she and Defendants entered into the Contract, under which Defendants agreed to provide general contractor services to renovate the Apartment (Compl. ¶¶ 7, 8); second, that Plaintiff fully performed all promises and conditions under the Contract, including payment of $54,000 to Defendants (*id.* at ¶ 10); third, that Defendants negligently failed to exercise ordinary due care and skill in planning, designing, supervising, and managing the Renovation Project, and thereby breached the Contract (*id.* at ¶¶ 11, 12);[6] and fourth, that, as a result of Defendants' breach of the Contract, Plaintiff has, *inter alia,* incurred the expense of hiring another contractor to replace and complete the work Defendants performed on the Apartment, and been fined by the Board for numerous code violations (*id.* at ¶¶ 12, 13).  Thus, Plaintiff's factual allegations, accepted as true, state a claim against Defendants for breach of contract.

### B.      Negligence and Fraud

Unlike her contract claim, Plaintiff's negligence and fraud claims cannot be maintained, as pleaded.  To state a negligence claim under New York law, a plaintiff must plead (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury "substantially

---

[6] "A cause of action for breach of contract may be based on an implied promise to exercise due care in performing the services required by the contract."  *Santulli v. Englert, Reilly & McHugh, P.C.*, 78 N.Y.2d 700, 705 (1992) (citations omitted).

caused" by that breach. *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). As a threshold matter, "[a] simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated." *Macmillan, Inc. v. Federal Ins. Co.*, 764 F. Supp. 38, 41 (S.D.N.Y. 1991); *see also Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551 (1992) (merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort) (citations omitted). While Plaintiff alleges that Defendants negligently and defectively planned, designed, supervised, and managed the Renovation Project (Compl. ¶ 11), she has not alleged that Defendants owed her any duty independent of the Contract. For this reason, Plaintiff cannot maintain a negligence action, and no award of damages on such a claim would be appropriate. *See Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873 (ENV) (JO), 2011 U.S. Dist. LEXIS 29341, at *5 (E.D.N.Y. Mar. 14, 2011) (stating that "awarding damages in the face of insufficient allegations, even after default judgment is entered, would be inconsistent with the threshold requirement that a complaint be well-pleaded," and adopting recommendation that recovery be denied due to insufficiency of pleadings).

Similarly, Plaintiff cannot maintain her fraud claim, which is duplicative of her contract claim. Under New York law, the elements of a fraudulent misrepresentation claim are: "(1) [that the] defendant made a material misrepresentation of fact; (2) that the misrepresentation was made intentionally in order to defraud or mislead the plaintiff; (3) that the plaintiff reasonably relied on the misrepresentation; [and] (4) that the plaintiff suffered damage as a result of its reliance on the defendant's misrepresentation." *Harding v. Naseman*, No. 07 Civ. 8767 (RPP), 2009 U.S. Dist. LEXIS 58149, at *71, 72 (S.D.N.Y. July 8, 2009) (citations omitted). A fraud claim, however, "cannot exist when [it] arises out of the same facts as a breach of contract

claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations." *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 761 (S.D.N.Y. 1995), *accord Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) (noting that "a plaintiff cannot disguise a breach of contract claim as a fraud claim").  The "critical question" in determining whether a plaintiff can maintain separate breach-of-contract and fraud claims is whether the defendant's alleged misrepresentation was "'collateral or extraneous'" to the contract in question.  *Astroworks*, 257 F. Supp. 2d at 616 (citation omitted).  In this case, Defendants' alleged misrepresentation goes to the heart of the asserted contract, in that Plaintiff simply alleges that Defendants neither intended to, nor could, fulfill their end of the bargain. (*See* Compl. ¶ 28.)  Accordingly, Plaintiff cannot maintain her fraud claim and should not be awarded any fraud damages.

### B.    <u>Deceptive Trade Practices</u>

Plaintiff also cannot maintain her claim for deceptive trade practices, under the applicable New York law, which prohibits "[d]eceptive acts or practices in the conduct of any business."  N.Y. Gen. Bus. L. § 349(a); *see also id.* § 349(h) (providing for private right of action under statute).[7]  Under Section 349(a), the phrase "deceptive acts or practices" is limited to actual misrepresentations (or omissions), made to consumers, in New York.  *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002) (citations omitted).  "An act is deceptive . . . only if it is likely to mislead a reasonable consumer."  *Marcus v. AT & T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) (citations omitted).  As the purpose of Section 349 "is to protect the consumer

---

[7] Plaintiff merely claims that Defendants engaged in "deceptive trade practices," without citing any particular law.  (*See* Compl. ¶ 33.)  As such a claim in New York would be governed by Section 349 of the State's General Business Law, the Court considers that statute here, even though not specifically cited by Plaintiff.

public-at-large," *Siotkas v. Labone, Inc.*, 594 F. Supp. 2d 259, 277 (E.D.N.Y. 2009) (citing

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 24-25

(1995)), "[a]t the threshold, a plaintiff must [allege] that the § 349 claim implicates 'consumer

oriented' conduct by the defendant," *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d

Cir. 2000) (quoting *Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999) (internal

citation omitted).  "Under New York law, a deceptive act or practice 'that has a broader impact

on consumers at large' meets this threshold test, but a private contract dispute . . . does not." *Id.*

(internal quotations omitted).

Therefore, to make out a *prima facie* case under this law, a plaintiff must plead facts

capable of establishing that "(1) the defendant's deceptive acts were directed at consumers,

(2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."

*Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers*, 85 N.Y.2d

at 25).  Moreover, the plaintiff must also allege that the deceptive acts complained of took place

within the State of New York.  *Goshen*, 98 N.Y.2d at 325; *see, e.g.*, *Kaufman v. Sirius XM*

*Radio, Inc.*, 751 F. Supp. 2d 681, 686-88 (S.D.N.Y. 2010) (holding that plaintiffs could not

maintain a viable suit under Section 349 because plaintiffs failed to plead that defendant's

deceptive acts transpired within the boundaries of the State of New York) (following *Goshen*),

*aff'd*, No. 11-0121-cv, 2012 U.S. App. LEXIS 6683, at *7 (2d Cir. Apr. 4, 2012).

Plaintiff's deceptive trade practices claim, as alleged in the Complaint, has two fatal

flaws.  First, Plaintiff has not alleged where the supposed deceptive act took place.  *See Siotkas*,

594 F. Supp. 2d at 277 (stating that, as plaintiffs had failed to plead where the allegedly

deceptive acts occurred, plaintiffs should either withdraw their claims voluntarily or provide a

supplemental memorandum containing this necessary allegation) (citing *Goshen*).  Plaintiff

cannot overcome this shortcoming in the Complaint by relying upon her state of residency to establish the locus of Defendants' deceptive conduct, *see Goshen,* 98 N.Y.2d at 325 ("[O]ur General Business Law analysis does not turn on the residency of the parties"), especially as Design is alleged to be a New Jersey business, and as Plaintiff may have met with Defendants in New Jersey prior to the commencement of the Renovation Project.

Second, even if the Court were to infer from Plaintiff's pleading that any deceptive act by Defendants likely took place in New York (the location of the Apartment), Plaintiff has still not adequately pleaded that Defendants actually directed "deceptive acts" (*i.e.*, misrepresentations or omissions) at consumers at large, nor has she attributed any specific deceptive statement or act to Defendants.  Plaintiff does allege in her Complaint that, in her case, Defendants "engaged in deceptive trade practices [by] intentionally misrepresenting their ability to perform under the agreement between the parties" (Compl. ¶ 31), and she further alleges, in general terms, that Defendants have "engaged in this practice with several other parties" (*id.* at ¶ 32).  In addition, in support of these allegations, Plaintiff has now submitted a copy of a newspaper article, reporting that Christo was charged by a New Jersey prosecutor for selling home improvements to a property owner without registering with the New Jersey Department of Consumer Affairs.  (*Id.* at ¶ 32.)  The sparse and conclusory allegations of Plaintiff's Complaint, however, are insufficient to plead that Defendants directed deceptive acts at consumers in New York within the meaning of the statute, and Plaintiff cannot save her pleading by relying on a news article that is hearsay and that, in any event, focuses on Christo's alleged violation of New Jersey law.

Based on the Complaint, the parties' dispute in this case is best characterized as a private contract dispute, which the statute does not cover.  *See id.* at 25 ("Private contract disputes unique to the parties . . . would not fall within the ambit of the statute.").  Accordingly, Plaintiff

cannot maintain a deceptive trade practices action, and no award of damages for this claim would be appropriate.

### C.  <u>Conversion of Property</u>

"[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (citation omitted).  Under New York law, "[t]o state a claim for conversion, [a] plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.'"  *Sabilia v. Richmond*, 11 Civ. 739 (JPO) (MHD), 2011 U.S. Dist. LEXIS 152228, at *58-59 (S.D.N.Y. Oct. 26, 2011) (alteration in original) (quoting *Seanto Exps. v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001)).  "When the original possession is lawful, 'conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property.'"  *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (quoting *Johnson v. Gumer*, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)).  "Only the refusal to the demand makes the defendant a wrongdoer."  23 N.Y. Jur. *Conversion, and Action for Recovery of Chattel* § 47 (2011).

Plaintiff has not adequately pleaded conversion.  She has impliedly alleged that she is the rightful owner of 10 pieces of antique cabinet hardware, and that, by virtue of the Contract, Defendants obtained lawful control over these 10 pieces.  (Compl. ¶¶ 34-36.)  She has not, however, alleged that she demanded that Defendants return these 10 pieces of hardware, and that Defendants either refused to comply with her request or disposed of the property.  Rather, she merely claims that Defendants "retain[ed] cabinet hardware."  (*Id.* at ¶ 35.)

Although there are certain exceptions to the requirement that "demand and refusal" be pleaded for a conversion claim, *see 470 West End Corp. v. East River Sav. Bank*, 424 N.Y.S.2d 859, 861 (N.Y. City Civ. Ct. 1980) (holding that demand and refusal need not be pleaded where the lawful custodian of property "commits an overt and positive act of conversion") (citation omitted); *Del Piccolo v. Newburger*, 9 N.Y.S.2d 512, 513 (Sup. Ct. App. Term 1st Dep't 1939) (noting that pleading of demand and refusal is not required where the lawful custodian "exercises an act of ownership inconsistent with the ownership and dominion of the true owner"); *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 260 (2002) (stating that pleading of a demand is not required where making a "demand would be futile because the circumstances show that the defendant knows it has no right to the goods," as when the defendant "is a thief"), Plaintiff has alleged no facts that could meet the requirements of any of these exceptions. Accordingly, Plaintiff cannot maintain her conversion action as pleaded, and no damages should be awarded on this claim.[8]

## III.   ADEQUACY OF SUPPORT FOR CONTRACT DAMAGES

In its Order directing Plaintiff to file Proposed Findings of Fact and Conclusions of Law, the Court noted that, in her submission, Plaintiff "should specifically tie [her] proposed damages figure(s) to the legal claim(s) on which liability has now been established."  (Order, dated June 14, 2010 (Dkt. 11), at 1)  In her Proposed Findings, however, Plaintiff merely lists several categories of requested damages, making no effort to tie any of those purported damages to her particular legal claims.  As the Court cannot discern whether Plaintiff is seeking only certain

---

[8] As Plaintiff may be able to cure the pleading defect in her conversion claim, I recommend that the default against Defendants on this claim be vacated and that Plaintiff be granted leave to replead this claim, to allege that she duly demanded the return of the hardware in question, but that Defendants refused that demand.

categories of damages on her contract claim (the one claim she has adequately pleaded), the Court will consider each damages category in turn, in relation to that claim.

### A.    Reimbursement of Fees Paid to Defendant Christo

Plaintiff first seeks reimbursement of the fees that she paid to Defendants, which she asserts totaled $54,000.  (Proposed Findings at 4.)  In support of this damages demand, Plaintiff has submitted, through a declaration of counsel:  (1) copies of five cancelled checks apparently written by her and made payable to Christo, totaling $34,000 (*id.* Ex. E (copies of checks bearing dates from Sept. 30, 2006 to Feb. 9, 2007)); (2) a letter from a bank stating that, on November 16, 2008, Plaintiff initiated a wire transfer in the amount of $15,000 to Christo (*id.*); and (3) an apparent checking account receipt, dated "11/29," indicating that a check was written in the amount of $5,000 and made payable to Christo (*id.*).  Plaintiff, however, does not provide support for the propositions that these amounts were paid to the party with which she actually contracted; that the amounts were actually paid under the terms of the Contract; that, to the extent the payments may have been for "materials," she did not actually receive the materials in question; and that she would be entitled to the reimbursement of any of her payments to Christo as contract damages.

First, the Court notes that the Contract, as attached to Plaintiff's Proposed Findings (Proposed Findings Ex. A), is stated to be an agreement between Plaintiff and "Rose C. Christo Design Studio Inc." (*id.*).  It is not even clear that this entity is the same as "Design Studio," the entity named as a defendant in this action, but, assuming it is, Plaintiff has provided no explanation as to why she apparently made payments, by check, directly to the principal of that company (*i.e.*, Christo), as opposed to the company with which she had actually contracted. Certainly, Plaintiff's Complaint does not include any well-pleaded allegations that explain this or

16

that separately would support holding Christo personally liable for the conduct of the corporate defendant.[9]

Second, nowhere does the Contract state that Design's work on the Renovation Project was to be performed for a contract price of $54,000.  To the contrary, the Contract, on its face, states: "[Plaintiff] [a]grees to pay Rose C. Christo/Design Studio Inc. [t]he sum of [$]20,000 / [$]10,000 (half) to start the Project and the balance of $10,000 to be paid in full upon completion of the project."  (*Id.*)  Another amount – perhaps $1,500 – is also written in below this, by hand, and marked "paid" (*see id.*), but the writing is not entirely legible, and Plaintiff has provided no explanation of this handwritten addition.  The Contract goes on to state that "[t]his Agreement constitutes the entire Agreement between both parties and shall not be supplemented, modified or amended unless executed in writing by both parties."  (*Id.*)  Based on this, it appears that, in the absence of written change orders (none of which have not been provided to the Court), Plaintiff was only contractually obligated to pay defendant Design $10,000 (or perhaps $11,500, although the additional amount is not explained) until the job was satisfactorily completed.

Third, although a "Materials List," with stated prices, is attached to the Contract and arguably incorporated therein, it is not clear from this list, standing alone, that (a) Plaintiff paid Defendants to supply all of the itemized materials, (b) Plaintiff paid the listed prices, or (c) the materials were not supplied by Defendants or, if they *were* supplied, they were unsuitable or unusable for the job, as eventually completed by another contractor.  On these points, the Court

---

[9] The Court does note that, in the section of the Contract relating to the payment by Plaintiff, the Contract states that Plaintiff agrees to pay certain fees to "Rose C. Christo/Design Studio Inc." (*id.*), but the Contract does not explain why a slash has been inserted between Christo's name and Design Studio Inc.  If this slash is meaningful with respect to Plaintiff's payment obligations, Plaintiff herself has not explained it, either in her Complaint or her Proposed Findings.

notes that the listed total for the itemized materials, plus "Electrical Supplies," is $17,538.10 – a sum that, even added to the fees specified on the face of the Contract, would still not total the $54,000 that Plaintiff claims to have paid for the Renovation Project.  Moreover, two of the items have handwritten question marks after them, and one has no price, suggesting that the list may have been only a preliminary price list.  Also, at the end of the list, the following handwritten notation appears, with no explanation:

|  | $10,000.00 | Supplies |
|---|---|---|
| LABOR: | $10,000.00 | LABOR |
|  | $20,000.00 |  |

(*Id.*)  The Court also notes that the listed materials include, *inter alia*, a French door, a bathroom door, a garbage disposal, kitchen and bathroom cabinets, and closet shelves and rods.  (*See id.*) Plaintiff offers absolutely no information as to whether these types of materials, if paid for by her, were delivered and ultimately installed in her apartment, whether by Defendants or a substituted contractor.  The Court, however, notes that an exhibit attached to Plaintiff's Complaint (Compl. Ex. B), which appears to describe the work needed to complete the Renovation Project after it was abandoned by Defendants, lists numerous materials – including items such as bathroom cabinets and closet shelves – as "already purchased" (*see id.*).  Plaintiff has not articulated any theory under which she could possibly be entitled to a refund of amounts she paid for items that were actually provided to her and were eventually installed for her benefit and enjoyment.

Finally, even assuming Plaintiff paid $54,000 to Defendants, she has not demonstrated that she would be legally entitled to reimbursement of this sum, or any portion thereof, as a remedy for Defendants' claimed breach of contract.  In a contract case involving deficient construction work, "[t]he general rule," under New York law, "is that the measure of damages is

18

the market value of the cost to repair the faulty construction," *Rivers v. Deane*, 619 N.Y.S.2d

419, 420 (4th Dep't 1994) (citation omitted).  Even where the defect arising from the breach of

contract "'is so substantial as to render the finished building partially unusable and unsafe, the

measure of damage[s] is the market price of completing or correcting the performance.'"  *Id.*

(quoting *Bellizzi v. Huntley Estates*, 3 N.Y.2d 112, 115 (1957)).  Plaintiff has offered no law to

suggest that, on the facts alleged, the reimbursement of her contract payments would be a proper

measure of her damages, as opposed to the market price that she would have been required to

pay to any substitute contractor(s) to repair or complete the defective work performed by Design.

As to her repair/completion costs, while Plaintiff alleges in her Complaint that she paid

another $50,000 to repair and complete the defective work, she does not, in her Proposed

Findings, seek that sum as damages.  In connection with this damages inquest, she has also not

submitted any affidavit or declaration by anyone with person knowledge of these costs or of the

scope of the work that was necessitated by Defendants' breach; she has not submitted any

documentary support for her claim that she, in fact, paid $50,000 to complete the work for which

she originally contracted; and she has not submitted any evidence to demonstrate that, if paid,

$50,000 was a reasonable market rate for the services performed.  In fact, the only document

before the Court that relates to these issues is the above-referenced exhibit to Plaintiff's

Complaint (Compl. Ex. B), and while that exhibit supposedly supports Plaintiff's allegation that

she "incurred additional expense of approximately Fifty Thousand Dollars to have said second

contractor and electrician repair and complete [the] work" (Compl. ¶ 13), the exhibit actually

appears to be a contract for certain work to be performed for the price of $26,500 (*see id.*, and

Ex. B thereto).

Under the circumstances, this Court cannot recommend that Plaintiff be awarded either the fees she claims to have paid to Christo or the amount she allegedly paid to other contractor(s) to repair and complete the work.  For the reasons discussed above, Plaintiff has failed to satisfy her burden of demonstrating any such damages to a reasonable certainty.

**B.**     **Reimbursement of Payment for Fines Levied by the Board**

In support of her damages claim for fines purportedly levied on her by the Board as a result of Defendants' defective work on the Apartment, Plaintiff relies, without explanation, on a document that seems to be a statement of an account in Plaintiff's name, dated March 18, 2010. (Proposed Findings at 4 and Ex. F.)  This account statement, however, merely shows a "previous balance" in the amount of $63,200.14, and certain charges related to taxes and utilities.  (*Id.*) The document provides no details regarding the source of this previous balance, and makes no mention of any fine or violation.  As such, it is patently insufficient to support Plaintiff's damages claim.

The only evidence submitted by Plaintiff that even references "fines" is a copy of a letter dated June 7, 2007, to Plaintiff, from an attorney for the Building's Cooperative Corporation. (Proposed Findings Ex. D.)  This letter states that a report from an electrician retained by the Cooperative Corporation had "reveal[ed] numerous violations" with respect to "improper and unauthorized electrical alteration work that was done in [Plaintiff's] apartment."  (*Id.* at 1.) Although the letter purports to attach a copy of this electrician's report (*see id.* ("as the annexed inspection report reveals, the work was not performed in conformance with the applicable laws and codes . . . .")), no such report has been provided to the Court.  In any event, the letter does not state that any fines were being assessed against Plaintiff, much less the specific basis for, or the amount of, any such fines.  Rather, the letter merely indicates that counsel for the

Cooperative would be sending a copy of his letter "to the Board for its review and consideration as to whether fines will be imposed as a results of your breach of the alteration agreement and the damages it has caused . . . ."  (*Id*. at 2.)

In the absence of any documented – and explained – support for the nature and amount of any fines levied on and paid by Plaintiff, I recommend that her request for reimbursement for the payment of fines be denied.

C.     **Lost Rental Income, and Reimbursement of Apartment
       "Carrying Costs," During Period of "Constructive Eviction"**

In her Proposed Findings, Plaintiff states that she is demanding damages for

> Twenty-one months of constructive eviction, resulting in Plaintiff's inability to sublet this apartment for these twenty-one months, with estimated monthly rental income of FOUR THOUSAND ($4,000.00) totaling to EIGHTY-FOUR THOUSAND ($84,000.00).  This is inclusive of Plaintiff's monthly mortgage and carrying charges, ONE THOUSAND EIGHT HUNDRED TWELVE AND SIX CENTS ($1,812.06) for twenty-one months, totaling to THIRTY-EIGHT THOUSAND FIFTY-THREE AND TWENTY-SIX CENTS ($38,053.26).

(Proposed Findings at 4.)  Nowhere, however, does Plaintiff explain whether the construction, if properly performed, would have enabled her to remain in the Apartment, or whether she would have been required to vacate the premises, in any event, given the substantial nature of the work.  She also fails to explain how she was "constructively evicted" for *21 months*, as she does not state when Defendants actually commenced work on the Apartment, when they "abandoned" the project (*see* Compl. ¶ 11), or when Plaintiff became aware that she would need to retain a substitute contractor to repair and complete the work.  In this regard, the Court notes that Plaintiff's Complaint contains an exhibit (Compl. Ex. B), which appears to show that a substitute contractor she eventually hired expected to perform all necessary tasks in a period of approximately a month and a half (*see id.*).

21

Plaintiff also fails to itemize how much of her requested damages constitute her mortgage and maintenance payments for the Apartment, and she further fails to explain how, in the absence of any contract breach, she would have been relieved from making such payments.  She also fails to explain how she could possibly be entitled to recover *both* the "carrying costs" of the Apartment (*see* Proposed Findings at 4) *and* the cost of obtaining "alternate housing," as suggested in her Complaint (*see* Compl. ¶ 17), given that she undoubtedly would have had to pay housing costs, in one place or another, regardless of any breach.

Moreover, to the extent Plaintiff may be seeking lost profits from anticipated rental income, Plaintiff has submitted no evidence to support such a damages claim.  In a breach-of-contract action, "a plaintiff is entitled to recover lost profits only if he can establish both the existence and amount of such damages with reasonable certainty."  *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000).  "Projections of future profits based upon 'a multitude of assumptions' that require 'speculation and conjecture' and few known factors do not provide the requisite certainty."  *Id.* (citation omitted).  In this case, Plaintiff has not demonstrated a history of subletting the Apartment; she has not shown that she had any right to sublet, under the rules of her Cooperative; she has not shown a ready tenant; and she has not demonstrated anything about the market rates for rentals of comparable apartments.  She has also represented to the Court that she, herself, resides in the Apartment (*see* Proposed Findings at 1), and she has offered no documentary evidence to demonstrate that she would have incurred additional costs, or enjoyed any cost savings, had she sublet her Apartment and resided elsewhere.  Under these circumstances, Plaintiff's submissions do not support her damages claim for any period of mortgage, maintenance, or alternate housing costs, or lost profits, and I therefore recommend that Plaintiff's request for all such damages be denied.

22

### D.   Additional Lost Rental Income

Plaintiff also appears to seek recovery for the rental income she supposedly would have received by renting the Apartment for 22 months (*i.e.*, nearly another two years) after the construction work was repaired and complete.  (*See* Proposed Findings at 5.)  Although her submission on this point is extremely vague, it seems that Plaintiff is arguing that the Board would have permitted her to sublet the Apartment for that period, but for a souring of the Board's relationship with Plaintiff caused by Defendants' negligent and defective work. Plaintiff has submitted absolutely no evidence, of any kind, to support such claimed damages, and I recommend that none be awarded.

### E.   Payment for Hardware Retained by Defendants

Plaintiff appears to seek the estimated value of the antique hardware retained by Defendants as damages for her *conversion* claim, not her contract claim (*see* Proposed Findings at 4, 5), and, indeed, the factual basis for Plaintiff's demand for these damages – that Defendants stole her property – is entirely separate from the factual basis for her contract claim. As Plaintiff has neither expressly sought these damages on her contract claim nor submitted any authority to support that such damages could be recoverable on that claim, the Court need not consider, at this time, the adequacy of Plaintiff's proof as to the value of the property claimed to have been converted.

### F.   Legal Fees for Prosecuting this Action

Plaintiff has failed to demonstrate that she is entitled to attorney's fees for prosecuting this action.  "Generally, absent express contractual or statutory provisions to the contrary, attorney's fees are not recoverable as damages," *Nationwide Auction Co. v. Lynn*, No. 90 Civ. 7643 (AGS) (THK), 1996 U.S. Dist. LEXIS 4006, at *29 (S.D.N.Y. Apr. 1, 1996) (citation

omitted), and Plaintiff has cited no contractual or statutory provision that would warrant an award of attorney's fees in this case.  Nor is the Court aware of any such provision.  Moreover, "[t]here is no . . . right to an award of attorney's fees on an ordinary claim of breach of contract," *United States Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)), which is the only claim that Plaintiff has adequately pleaded (*see* Discussion *supra* at Section II). Accordingly, I recommend that Plaintiff's request for attorney's fees be denied.

### G.  Legal Fees for Negotiations with Board

Finally, Plaintiff has failed to show that she is entitled to $1,984 in fees that she allegedly paid to an attorney "for negotiations with the Board of Directors."  (Proposed Findings at 5.)  In support of this damages demand, Plaintiff has submitted a collection of documents that neither individually nor together establish to a reasonable certainty that she is entitled to recoup the fees she seeks.

First, Plaintiff has submitted a copy of a retainer letter dated October 29, 2007, addressed to her from Theresa Racht, Esq. ("Racht"), and bearing Plaintiff's signature.  (*See id.* Ex. H (copy of letter dated Oct. 29, 2007, printed on Racht's firm's stationery).)  On its face, though, this letter states that Plaintiff was retaining Racht not only "to advise [Plaintiff] and represent [Plaintiff] with respect to ongoing renovation issues concerning [the Apartment]," but also "to provide such advice and consultation on *other legal matters* as [Plaintiff] may require from time to time."  (*Id.* (emphasis added).)

Second, Plaintiff has submitted copies of nine invoices (including a duplicate copy of an invoice dated November 6, 2008), totaling $2,001, for legal services purportedly provided by Racht to Plaintiff.  (*Id.* (copies of invoices bearing dates from Dec. 6, 2007 to Feb. 6, 2009).)

24

These invoices, however, appear to bill for services well beyond any "negotiations with the Board," for which Plaintiff claims to seek reimbursement.  (*See* Proposed Findings at 5.)  For example, one invoice contains a charge for Racht's review of a summons and complaint, and another lists a charge for time that Racht spent discussing the election of Board members.  (*See id*. Ex. H.)  In fact, not a single one of the nine invoices even mentions "negotiation."  While Plaintiff might be entitled to recover from Defendants for certain of the work that Racht performed, she is certainly not entitled to recover for work that was not reasonably necessary to make her whole for Defendant's contract breach.  Moreover, it is Plaintiff's burden to demonstrate which of Racht's charges involved the Board "negotiation" for which Plaintiff purportedly seeks recovery, and Plaintiff has failed to do that, leaving the Court to try, on its own, to discern which charges might be reasonably recoverable from Defendants as contract damages.

Finally, Plaintiff has submitted a copy of an email exchange she had with Racht, regarding the amount of Racht's billing.  (*See id.* (copy of an email exchange between Plaintiff and Racht).)  In this exchange, Plaintiff first asks, on June 2, 2010, whether there is an "[e]asy way for you to determine how much money I've spent on your legal services in TOTAL? . . . It's for my suit against [Christo]."  (*Id*.)  In response, and without explanation, Racht provides the figure of $1,984.  (*See id*.)  Not only does this email exchange fail to focus on fees incurred for negotiations with the Board – *i.e.*, Plaintiff's claimed damages – but the stated total of Racht's fees, per her email, does not match the total amount shown in the invoices Plaintiff has separately submitted.

Given the lack of clarity inherent in these documents, they do not demonstrate, with reasonable certainty, that Plaintiff incurred $1,984 in legal fees for counsel's negotiations with

the Cooperative Board.  Nor do they demonstrate, with reasonable certainty, that some other sum was incurred for such negotiations, and I therefore recommend that Plaintiff's request for any such amount in damages be denied.

* * *

In sum, despite the Court's explicit direction to Plaintiff that her damages submission "should demonstrate how [she] has arrived at [her] proposed damages figure(s)," and "should be supported by an affidavit . . . containing an explanation of any documentary evidence that helps establish the proposed damages" (*see* Dkt. 11, quoted *supra* at 15), Plaintiff has neither provided an adequate basis for the calculation of her contract damages nor provided an explanation, by anyone with personal knowledge, of the meager documentary evidence that she has submitted in support of her application for such damages.  Under the circumstances, this Court finds that Plaintiff has not satisfied her burden of demonstrating her contract damages to a reasonable certainty, and has therefore not demonstrated her entitlement to any damages, on this inquest.

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the Court award no contract damages to Plaintiff as a result of Defendants' default.  I further recommend that the default judgment against Defendant be vacated with respect to Plaintiff's inadequately-pleaded negligence, fraud, and deceptive trade practices claims, and that these claims be dismissed with prejudice.  As to Plaintiff's claim for conversion of property, I also recommend that the default judgment be vacated, but I recommend that Plaintiff be granted leave to replead this claim if she is able to allege that she demanded the return of her property and that the demand was refused. (*See supra* at 14 and n.8.)

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken, United States Courthouse, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Oetken. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       June 21, 2012

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

27

Copy Mailed To:

Andrew C. Laufer, Esq.
Law Office of Andrew C. Laufer, PLLC
40 Exchange Place
Suite 1205
New York:, NY 10005

Ms. Rose C. Christo
DESIGN STUDIO INC.
10 Huron Avenue
Suite 10K
Jersey City, NY 07306