UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/14
```

------------------------------------------------------------------------X

DENA LENARD,                                        :

                 Plaintiff,               :      08 Civ. 10560 (LGS) (DF)

       -against-                                 :      **REPORT AND**
                                         **RECOMMENDATION**

DESIGN STUDIO and ROSE C. CHRISTO         :
a/k/a ROSEDA DESBORDES,

                                 :

              Defendants.               :

------------------------------------------------------------------------X

**TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:**

     This diversity case, which involves allegations by plaintiff Dena Lenard ("Plaintiff") that

a contractor she hired to renovate her New York City apartment performed poorly, failed to

complete the required work, abandoned the project, and wrongfully kept Plaintiff's property, is –

for the second time – before this Court for a damages inquest, on the default of defendants

Design Studio ("Design") and its principal, Rose C. Christo a/k/a Roseda Desbordes ("Christo")

(collectively, "Defendants").  The first time, almost two years ago, this Court issued a Report

and Recommendation to the Honorable J. Paul Oetken, to whom the case was then assigned,[1]

recommending that no damages be awarded on Plaintiff's contract claim, and that the default

judgment entered on Plaintiff's original Complaint be vacated as to Plaintiff's other claims.

(Dkt. 16.)  As to those remaining claims, this Court recommended that Plaintiff's claims for

negligence, fraud, and deceptive trade practices be dismissed with prejudice, but that Plaintiff be

---

[1] This case was originally assigned to the Honorable Richard J. Holwell, who entered a
default judgment in November, 2009, and referred it to me for a damages inquest.  The matter
was reassigned to Judge Oetken in 2011, and was then reassigned again, to Judge Schofield, in
2013.

granted leave to replead her claim for conversion of property. The Court adopted that recommendation in August, 2012. (Dkt. 17.) Plaintiff has now repleaded her conversion claim; the Court has entered a new default judgment on that claim; and the matter has been referred to this Court for another inquest, just as to that single claim.

For the reasons that follow, I recommend that Plaintiff be awarded $2,024.10 in damages on her repleaded conversion claim.

## BACKGROUND

### A.    Plaintiff's Original Complaint and This Court's Prior Recommendation

Plaintiff commenced this action by filing a Complaint in December 2008, asserting a number of distinct legal claims against Defendants, as noted above. (*See* Dkt. 1.) When, after being served with process, Defendants failed to respond to the Complaint, the Court (Holwell, J.) entered a default judgment against them as to liability, and referred the matter to this Court to determine the appropriate amount of damages and attorneys' fees, if any, to be awarded. (Dkt. 8.) This Court received from Plaintiff an attorney declaration and attached exhibits (Dkt. 15), which it found did not support the claimed damages figures.

Based on Plaintiff's Complaint and inquest submissions, this Court issued a Report and Recommendation on June 21, 2012 (Dkt. 16), recommending that no damages be awarded on Plaintiff's breach of contract claim and that the default judgment be vacated with respect to her various tort claims, which were inadequately pleaded, as a matter of law. Reasoning that most of those additional claims should be dismissed with prejudice, as repleading would be futile, this Court recommended that Plaintiff be granted leave to replead only her conversion claim, if she

2

were "able to allege that she demanded the return of her property and that the demand was refused." (Dkt. 16, at 26.)

After receiving no objections to this Court's Report and Recommendation, the Court (Oetken, J.) adopted it, in its entirety, by Order dated August 24, 2012. (Dkt. 17.)

## B.   Plaintiff's Amended Complaint

Plaintiff filed her Amended Complaint on September 24, 2012. (*See* Dkt. 18 (Amended Complaint, dated Sept. 21, 2012 ("Am. Compl.")).[2]) As pleaded, the Amended Complaint looks as if it contains only a single cause of action, but it once again contains language suggestive of a number of potential legal claims, including a breach-of-contract claim and various tort claims. Specifically, the Amended Complaint alleges the following:

Plaintiff is a resident of New York and owns a cooperative apartment (the "Apartment"), located at 504 Grand Street, New York, New York 10002 (the "Building"). (*Id.* ¶¶ 1, 9.) Defendant Design is a New Jersey corporation (*id.* ¶ 2), and defendant Christo is a resident of New Jersey and the majority shareholder of Design (*id.* ¶¶ 3, 4).

On or about November 20, 2006, Plaintiff received a proposal from Defendants offering to provide general contractor services for a project to renovate the Apartment (the "Renovation Project"). (*Id.* ¶ 7.) At all relevant times, Defendants represented to Plaintiff that they were "licensed to act as a general contractor to install heating, air-conditioning, plumbing, electrical systems and perform general contractor work," including the full renovation of the Apartment. (*Id.* ¶ 6.) Plaintiff accepted Defendants' proposal, purportedly entering into a contract with

---

[2] The Amended Complaint is also available at Dkt. 36-8.

Defendants (the "Contract"), on or about November 20, 2006.  (*Id.* ¶ 8.)  As described by

Plaintiff, the Contract required Defendants

> to install, supervise and manage the installation of an electrical, heating,
> plumbing and/or air conditioning system and engage in the renovation of
> the [Apartment] . . . owned by the Plaintiff subject to a stock certificate,
> proprietary lease, house rules and the City of New York's Building Code
> Rules and Regulations that would be suitable for the operation and
> habitation of [the Apartment].

(*Id.* ¶ 9.)

According to Plaintiff, she "fully performed all promises and conditions required [under

the Contract] as well as paying the Defendants fifty four thousand dollars ($54,000.00)" (*id.*

¶ 10), but Defendants breached the Contract by negligently constructing the Renovation Project,

later abandoning it, and failing to return any of Plaintiff's money (*id.* ¶ 11).  Moreover, Plaintiff

claims that Defendants "knowingly deprived [her] of her rights" (*id.* ¶ 21) by retaining

possession of purportedly "irreplaceable" antique latches and cabinet hardware removed from

the Apartment, estimated to be worth approximately $10,000 (*id.* ¶¶ 12, 21).

The Building's Cooperative Board (the "Board") cited Plaintiff for "several violations,"

which, she claims, were the result of Defendants' negligent execution of the Renovation Project,

and the Board also required her to hire and pay other contractors to repair Defendants' work.

(*Id.* ¶ 13.)  Plaintiff asserts that, as a result of Defendants' negligent actions, she was

constructively evicted from the Apartment for 21 months, during which time she paid a total of

$105,000 ($5,000 per month for 21 months) in "carrying costs" for the Apartment and "alternate

housing."  (*Id.* ¶¶ 14-16.)

4

**C.    Defendants' Default on the Amended Complaint,
and the Court's Referral for a New Damages Inquest**

On February 1, 2013, the Court (Oetken, J.) ordered Plaintiff to advise the Court whether

the Amended Complaint had been served, and if not, to show good cause why the case should

not be dismissed.  (Dkt. 19.)  Plaintiff requested and was granted an extension of time to

effectuate service (Dkt. 21), and finally served Defendants on February 20, 2013 (*see*

Dkts. 22-24).

Subsequently, Plaintiff moved again for the entry of a default judgment in her favor

(Dkt. 28), as Defendants once again failed to answer or otherwise respond to the Amended

Complaint.  The Court (Schofield, J.) granted Plaintiff's motion for default judgment as to

liability solely on Plaintiff's claim for conversion (Dkt. 32), and referred the matter to this Court

to determine the appropriate amount of damages, if any, to be awarded on that claim (Dkt. 34).

This Court issued a new Scheduling Order for submissions for a damages inquest,

expressly directing Plaintiff, as it had prior to its previous inquest, to submit proposed findings of

fact and conclusions of law, which, this Court stated,

> should specifically tie the proposed damages figure(s) to the legal claim(s)
> on which liability has now been established; should demonstrate how
> Plaintiff has arrived at the proposed damages figure(s); and should be
> supported by an affidavit that attaches as exhibits and contains an
> explanation of any documentary evidence that helps establish the proposed
> damages.

(Dkt. 35, at 1.)

**D.    Plaintiff's Current Proposed Findings**

On September 12, 2013, Plaintiff made written submissions on this inquest, consisting of

proposed findings of fact and conclusions of law (Plaintiff's Proposed Findings of Fact and

Conclusions of Law, dated Sept. 5, 2013 ("Proposed Findings") (Dkt. 36)), a supporting affidavit

(Affidavit of Dena Lenard, sworn to Sept. 5, 2013 ("Pl. Aff." or "Affidavit") (Dkt. 36)), and a set of exhibits (*see id.*).

Although this Court previously understood Plaintiff's conversion claim to relate only to Defendants' alleged failure to return her antique hardware, it appears that, in her Amended Complaint and Proposed Findings, Plaintiff has tried to recast that claim to relate *both* to Defendants' retention of her hardware and *also* to their retention of the monies Plaintiff allegedly paid to them under the Contract. (*See* Proposed Findings, at 6[3] (describing the Amended Complaint as pleading a claim against Defendants for "conversion of property and funds paid in advance of work to be performed based on the project agreement").)

As to the hardware, Plaintiff asserts in her submitted Affidavit (as she does in the Amended Complaint), that the estimated value of the antique hardware taken and not returned by Defendants was approximately $10,000. (*See* Pl. Aff. ¶ 14; Am. Compl. ¶ 21.) In her Proposed Findings, however, she sets out the figure of $2,000 as both the "estimated value of such pieces at the time of conversion" (Proposed Findings, at 6) and the approximate value of "replacement items," including "[c]omparable items of similar age, likeness and value" to the original hardware (Pl. Aff. ¶ 14). As discussed below, Plaintiff submits some documentary support for damages in the $2,000 range, for this loss. (*See* discussion *infra* pp. 15-17.)

As to the additional monetary damages that Plaintiff apparently seeks on her conversion claim, Plaintiff asserts in her Proposed Findings that she is entitled to recover $54,000, plus interest, for payments she made to defendant Christo that were not returned to her. (Proposed Findings, at 7.) She also asserts that she is entitled to a total of $32,810 that she paid to other

---

[3] The pages of Plaintiff's Proposed Findings and certain other submissions are not numbered, but this Court has assigned them numbers for ease of reference herein.

contractors, in repair and completion costs (*id.*),[4] although she makes no attempt to explain how these latter costs could possibly relate to a claim for conversion against Defendants.

Defendants have failed to respond to Plaintiff's Proposed Findings, or to contact the Court to request an in-court hearing regarding Plaintiff's claimed damages.

**DISCUSSION**

**I.     APPLICABLE LEGAL STANDARDS**

   **A.     Default Judgment and Damages**

While "default is an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), a district court "need not agree that the alleged facts constitute a valid cause of action," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), and indeed is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)); *Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).

Moreover, although "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability," it does not reach the issue of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages. *Au Bon Pain Corp.*, 653 F.2d at 65. A plaintiff

---

[4] This total represents $25,010 in payments allegedly made to First Construction Zone, Inc., plus $7,800 in payments allegedly made to Apex Electrical Contractors, Inc. (*Id.*)

must therefore substantiate a claim with evidence to prove the extent of damages. *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to establish damages with reasonable certainty"), and the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs, *see, e.g., Garden City Boxing Club, Inc. v. Hernandez*, No. 04 Civ. 2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

If a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even where liability has been established through default. *See*

*Lenard v. Design Studio*, 889 F. Supp. 2d 518, 538 (S.D.N.Y. 2012) (awarding no damages on plaintiff's breach of contract claim because, as stated in the Report & Recommendation adopted by the Court, "Plaintiff [had] not satisfied her burden of demonstrating her contract damages to a reasonable certainty"); *Griffiths v. Francillon*, No. CV 10-3101 (JFB) (GRB), 2012 WL 1341077, at *2 (E.D.N.Y. Jan. 30, 2012) (recommending that no damages be awarded because motion papers alone were insufficient to support an award of damages), *report and recommendation adopted*, 2012 WL 1354481, at *2 (E.D.N.Y. Apr. 13, 2012); *Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exch.*, No. CV 10-2837 (JFB) (WDW), 2011 WL 7285038, at *5 (E.D.N.Y. Aug. 10, 2011) (finding that the "Complaint and plaintiff's papers in support [were] woefully inadequate to support any monetary relief," and thus recommending that neither profits nor other damages be awarded), *report and recommendation adopted*, 2012 WL 464000, at *2 (E.D.N.Y. Feb. 10, 2012).

## B.   Conversion

"[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (citation omitted).  Under New York law,[5] "[t]o state a claim for conversion, [a] plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to

---

[5] New York law governs a cause of action where the alleged tort caused injury in New York. *See Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003) (citing *Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15 (2d Cir. 1989) (per curiam)). Presumably, such is the case here, where Plaintiff is a resident of New York and much of the conduct of which she complains occurred in New York, and where no party has suggested that any other substantive law applies.

another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.'" *Sabilia v. Richmond*, 11 Civ. 739 (JPO) (MHD), 2011 WL 7091353, at *19 (S.D.N.Y. Oct. 26, 2011) (alteration in original) (quoting *Seanto Exps. v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001)), *report and recommendation adopted*, 2012 WL 213656, at *1 (S.D.N.Y. Jan. 24, 2012).

When the defendant's "original possession [of the property] is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993) (quoting *Johnson v. Gumer*, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)). Thus, a lawful custodian of property cannot be charged with the conversion of it "until after a demand and refusal," *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007) (quoting *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101 (1908)), although "demand and refusal" will be considered futile, and thus not be required, in certain limited circumstances, such as where the custodian "commits an overt and positive act of conversion by an unlawful sale or disposition" of the property, *id.*, or "openly deals with the property as its own," *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 183 (2d Cir. 2000), or "knows it has no right to the goods," *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 260 (2002); *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 103 (1927).

When the property that has allegedly been converted is money, a claim for conversion will only lie where the plaintiff has retained ownership over the money, with merely technical possession of it passing to the defendant. For example, where the defendant acts as the plaintiff's sales agent, the nature of the parties' fiduciary relationship may prevent the defendant from gaining legal ownership of particular sales proceeds, and thus the defendant's retention of

10

such proceeds can constitute conversion. *See Britton v. Ferrin*, 171 N.Y. 235, 242-43 (1902)
(holding that plaintiff had stated a conversion claim against commission agents who, after selling
three carloads of produce furnished by plaintiff for sale, failed to turn over the sale proceeds to
plaintiff, as the commission agents were fiduciaries of their principals); *see also Filner v.
Shapiro*, 633 F.2d 139 (2d Cir. 1980) (stating that, where defendant owed both contractual and
fiduciary duties to plaintiff, the same facts could support both contract and conversion claims);
*Meese v. Miller*, 436 N.Y.S.2d 496, 501 (4th Dep't 1981) (finding that a claim for conversion
could lie where plaintiff alleged that "funds were entrusted to (defendants') . . . custody only for
a particular purpose, and remained the property and possession of plaintiff"). On the other hand,
where the defendant has actually obtained ownership of the money in question, the plaintiff may
*not* maintain an action for conversion. *See Hutchings v. Torrey*, 119 N.Y.S.2d 119 (Sup. Ct.,
Broome County 1953) (citing *Britton* and explaining this distinction).

Moreover, to state a conversion claim under New York law, "[w]here the property is
money, [the money] must be specifically identifiable and be subject to an obligation to be
returned or to be otherwise treated in a particular manner." *Cruz v. TD Bank, N.A.*, 855 F. Supp.
2d 157, 174 (S.D.N.Y. 2012) (quoting *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st
Dep't 1995)). Accordingly, "a conversion action may lie where funds are diverted entirely for an
unauthorized purpose," but not where only some insufficiently identifiable portion of the
custodial funds has been misused. *Shively v. Mitchell*, No. 13 Civ. 2164 (PAE), 2013 WL
5761498, at *11 (S.D.N.Y. Oct. 24, 2013) (dismissing plaintiff's conversion claim where only
part of $1 million investment was apparently misappropriated); *see also, e.g., Amusement
Industry, Inc. v. Midland Avenue Assoc., LLC*, 820 F. Supp. 2d 510, 534-35 (S.D.N.Y. 2011)
(finding that plaintiff stated a conversion claim for particular money that was to have been

placed in escrow); *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998)
(dismissing plaintiffs' conversion claim for money invested in a company, where plaintiffs did
not claim ownership of a specifically identifiable, segregated amount); *Security Pacific
Equipment Leasing, Inc. v. Earthworm Tractor Co. Inc.*, No. 88 Civ. 8035 (JFK), 1989 WL
52354, at *4 (S.D.N.Y. May 8, 1989) (dismissing plaintiff's conversion claim where defendant
"merely received and deposited plaintiff's check into an account," as "no identifiable funds could
have been converted").

## II.    PLAINTIFF'S DAMAGES CLAIMS

Without a response from Defendants, this Court must first determine whether, with
respect to each aspect of her conversion claim, Plaintiff's allegations in her Amended Complaint
are now sufficiently "well pleaded" to establish Defendants' liability. *See Mickalis Pawn Shop,
LLC*, 645 F.3d at 137; *Bambu Sales, Inc.*, 58 F.3d at 854 (noting that "[a] default judgment
entered on well-pleaded allegations in a complaint establishes a defendant's liability" (internal
quotation marks and citation omitted)).  Only if the allegations are sufficient to state a claim
should the Court then proceed to determine the appropriate amount of damages to be awarded.

### A.    Conversion of Antique Hardware

Plaintiff's original conversion claim, which she again asserts here, is that Defendants
converted a number of pieces of her antique cabinet hardware.  Although Plaintiff did not plead
this claim adequately in her initial Complaint, her Amended Complaint has sufficiently remedied
the original pleading defects to warrant an award in her favor.

12

### 1.    **Adequacy of Amended Pleading**

Plaintiff has now adequately pleaded a conversion claim against Defendants with respect to her antique hardware.  She has impliedly alleged that she is the rightful owner of antique latches and cabinet hardware, and that, by virtue of the Contract, Defendants obtained lawful control over them.  (Am. Compl. ¶¶ 12, 21.)  She has also alleged that Defendants retained control over the latches and hardware, despite having abandoned the Renovation Project.  (Am. Compl. ¶¶ 11, 12.)

Finally, as to the requirement of "demand and refusal," this Court previously recommended, as noted above, that Plaintiff be permitted to replead her original conversion claim "to allege that she duly demanded the return of the hardware in question, but that Defendants refused that demand."  (Dkt. 16, at 15 n.8.)  While Plaintiff has failed to add such allegations in her Amended Complaint,[6] she *has* added that Defendants "*knowingly* deprived [her] of her rights by unreasonably retaining possession of antique cabinet hardware."  (Am. Compl. ¶ 21 (emphasis added).)  As the "demand and refusal" requirement does not apply where the possessor "knows it has no right to the goods," *Seventh Regiment Fund, Inc.*, 98 N.Y.2d at 260; *Employers' Fire Ins. Co.*, 245 N.Y. at 103, and as Plaintiff has alleged that Defendants' unauthorized retention of the cabinet hardware was both a "knowing[]" and "unreasonabl[e]"

---

[6] Plaintiff's failure to allege such facts is puzzling, given Plaintiff's inclusion, with her Proposed Findings, of documentary evidence purporting to show that she *had* demanded the return of this property. (*See* Pl. Aff. ¶ 13 (noting that "Defendants were contacted with repeated attempts to regain control of the antique hardware removed from my apartment"); Dkt. 36-7 (stating, in a letter purporting to be from Wylie M. Stecklow, Esq. to Rose Christo Design Studio, Inc., that "[Plaintiff] is seeking the return of the original handles for the cabinets in the kitchen and any other hardware that has been removed from the premises. . . . [Plaintiff] has made numerous requests in the past few weeks for the return of the keys and this property").)

interference with her ownership rights, Plaintiff has adequately stated a cause of action for the conversion of this property.

### 2.   <u>Damages for Conversion of Hardware</u>

"The usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 395 (S.D.N.Y. 2010) (quoting *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326 (1980)); *see also* N.Y. C.P.L.R. § 5001.  As explained below, this Court recommends finding that Plaintiff has adequately shown $2,024.10 to be a fair estimate of the value of the converted hardware, although Plaintiff has not demonstrated an entitlement to interest.

As noted above, Plaintiff variously appears to seek damages on this conversion claim of either $10,000 or $2,000, as the estimated value of her original antique hardware or comparable items. (*See* Pl. Aff. ¶¶ 14, 20; Proposed Findings, at 6-7.)[7]  Plaintiff, however, has provided no evidence to support her bald assertion that the 18 hinges and unspecified number of cabinet latches and handles that Defendants converted were worth $10,000. (*See* Pl. Aff. ¶ 14.) Accordingly, she has not demonstrated an entitlement to that amount in damages. *See House v.*

---

[7] In her Amended Complaint, Plaintiff requests that the Court award either the "[r]eturn of [the] antique hardware, or an amount representative of the fair value of such hardware." (Am. Compl., at 4.)  The Court notes that the return of the converted property could be an appropriate remedy, *see, e.g., Employers' Fire Ins. Co.*, 245 N.Y. at 106 (ordering the return of chattel or the payment of a sum of money to plaintiff), but that Plaintiff's inquest submissions indicate that she has abandoned the goal of regaining her cabinet hardware and has opted instead to pursue its replacement value (*see* Proposed Findings, at 7; Pl. Aff. ¶ 20).  Similarly, Plaintiff appears to have abandoned the requests for other relief, such as statutory damages, attorneys' fees, and costs, that she made in her Amended Complaint (*see* Am. Compl., at 4-5), as she has neither requested such relief in her Proposed Findings, nor submitted any legal authority, calculations, or proofs, in her inquest submissions, to support the award of such relief.

*Kent Worldwide Machine Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order noting that a "district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty" (citation omitted)).

In support of the alternate $2,000 figure (Pl. Aff. ¶ 14), Plaintiff has at least presented some documentation. In particular, she has submitted an email exchange that she apparently had with Mike Kennedy ("Kennedy") of Kennedy Hardware, LLC, pertaining to the availability and price of antique and reproduction cabinet hardware; in those emails, Kennedy wrote, on January 15, 2008, that his store had only reproduction hinges available, but that "[o]riginal hinges[,] when available[,] are typically in the $50 to $75 range" (Dkt. 36-6, at 1). It appears that Plaintiff has used the upper limit of this range in calculating the cost of replacing the 18 hinges to be $1,350.[8] (*See* Pl. Aff. ¶ 14.) In addition, Plaintiff has submitted an email exchange that she apparently had with Connie Robinson ("Robinson"), of www.RobinsonsAntiques.com, in which Robinson wrote, on February 6, 2008, that she "ha[d] only two (2) of the latches [that Plaintiff was] looking to match," and that "ice box latches are[] $49.95 each, and the catches . . . are $24.95 each." (Dkt. 36-6, at 3.) Robinson's email does not indicate whether the prices she is quoting are for authentic antique hardware or reproductions, nor is it entirely clear that the terms "latch" and "catch," as used by Robinson, are equivalent to the terms "latch" and "handle," as used by Plaintiff. (*See* Pl. Aff. ¶ 14.) Assuming that the prices quoted by Robinson were, in fact, for latches and handles comparable to those in question, and that Defendants converted

---

[8] This figure is calculated as follows: 18 hinges x $75/hinge = $1,350.

nine of each,[9] Robinson's email provides support for a claim of $674.10 in damages for these items.[10]

Even though Plaintiff has not provided evidence of the value of the hardware at the precise time of its conversion, it appears that the price quotes she obtained from Kennedy and Robinson were made within about a year of Defendants' abandonment of the job. (*See* Pl. Aff. ¶¶ 10 (stating that Plaintiff notified Defendants on February 24, 2007 that she would no longer be using their services), 12 (stating Rose Christo Design Studio was fired around March 17, 2007).) Further, although the emails Plaintiff has submitted regarding the hardware's replacement value are imprecise, those emails still afford a reasonable basis, under the circumstances, for calculating the value of the converted hardware. *See Transatl. Marine Claims Agency, Inc.*, 109 F.3d at 111; *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 643 F. Supp. 2d 446, 456 (S.D.N.Y. 2009) (noting that it is "well established" that "[t]he rule of certainty as applied to the recovery of damages does not require mathematical

---

[9] These assumptions comport with an email message submitted by Plaintiff from Plaintiff to an unnamed recipient, in which Plaintiff explained "that's $50 times 9 handles plus $25 x 9 latches." (Dkt. 36-6, at 3.) They also comport with Plaintiff's assertion that Defendants removed 36 total pieces of hardware from her Apartment, only 18 of which were hinges. (*See* Pl. Aff. ¶ 14.)

[10] This figure is calculated as follows:

$$9 \text{ latches} \times \$49.95/\text{latch} = \$449.55$$
$$9 \text{ catches} \times \$24.95/\text{catch} = \underline{\$224.55}$$
$$\$674.10$$

Plaintiff calculated this subtotal to be $674.55 (*see* Pl. Aff. ¶ 14), but there appears to be no explanation for the discrepancy of $0.45.

16

accuracy or absolute certainty or exactness, but only that the loss or damage be capable of ascertainment with reasonable certainty") (internal quotation marks and citations omitted).

Accordingly, this Court finds that Plaintiff has shown, with reasonable certainty, that the approximate value of the converted hardware was $2,024.10, as calculated above. (*See supra*, notes 8 & 10.)

Plaintiff has not, however, demonstrated an entitlement to pre-judgment interest on that amount. While the "usual measure" of damages for conversion includes interest, *see Marketxt Holdings Corp.*, 693 F. Supp. 2d at 395; N.Y. C.P.L.R. § 5001(a), Plaintiff did not specify in her Amended Complaint that she sought pre-judgment interest, and Rule 54(c) of the Federal Rules of Civil Procedure mandates that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160-62 (2d Cir. 2007) (affirming default judgment that did not include an award of pre-judgment interest, and noting that a boilerplate demand for "such other and further relief as the Court deems just and proper" does not constitute a demand for pre-judgment interest); *Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 401 (S.D.N.Y. 2012) (finding plaintiff who failed to request pre-judgment interest in the complaint was not entitled to it on default). As the Amended Complaint did not request an award for pre-judgment interest, such an award should not now be granted. *See* Fed. R. Civ. P. 54(c); *Silge*, 510 F.3d at 159-60; *Pacific M. Int'l Corp.*, 888 F. Supp. 2d at 401.

I therefore recommend that Plaintiff be awarded $2,024.10 in damages on her claim for the conversion of her antique latches and cabinet hardware.

### B.    Conversion of Payments Made Under the Contract

Plaintiff also appears to allege that Defendants converted payments she made to them under the Contract, by failing to return any of the $54,000 that she paid as consideration for Defendants' construction services, when they "knew they would not be completing the project under the terms of the contract." (*See* Am. Compl. ¶¶ 9-11, 19, 20, 22.) As discussed below, Plaintiff has not adequately pleaded such a claim, and should not be awarded damages for it.

### 1.    Adequacy of Plaintiff's Amended Pleading

As set out above, when the subject of a conversion claim is money, that money must be "specifically identifiable" and "subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz*, 855 F. Supp. 2d at 174. Here, Plaintiff does not allege (nor does the Contract, as appended to the Amended Complaint, state) that any monies paid by Plaintiff to Defendants were to have been held in trust by Defendants until the completion of the project or otherwise segregated from Defendants' operating capital as a specifically identifiable fund. (*See generally* Contract between Dena Lenard and Rose C. Christo Design Studio, Inc. ("Design Contract") (Dkt. 36-3).)

Similarly, Plaintiff does not allege (nor, again, does the Contract itself state), that Defendants were obligated to treat Plaintiff's payments in any particular manner. In this regard, the parties merely agreed, per the Contract, that, "[u]pon completion of [the] project," Design would return Plaintiff's "keys and property . . . in clean and satisfactory condition" (*see id.* at 1), a requirement that, on its face, would not appear to relate to monetary payments. Neither the Amended Complaint nor the Contract suggests that the parties intended Defendants to accept payment from Plaintiff in a fiduciary capacity, as opposed to a merely contractual one, so as to

render Defendants potentially liable for a claim for conversion of the funds. *See Britton*, 171 N.Y. at 242-43; *Hutchings*, 119 N.Y.S.2d at 119.

It is well-established that "conversion may not be predicated merely on a breach of contract," *Sutton Park Dev. Corp. Trading Co., Inc. v. Guerin & Guerin Agency, Inc.*, 297 A.D.2d 430, 432 (3d Dep't 2002); *see also Daub v. Future Tech Enterprise, Inc.*, 65 A.D.3d 1004 (2d Dep't 2009) (dismissing conversion action based on contractual right to payment, where plaintiff never had ownership, possession, or control of the disputed funds), and, while the same conduct that gives rise to a breach of contract claim may also give rise to a separate claim for conversion, it does so only where the conduct "also constitute[s] the breach of a duty arising out of the contract relationship which is independent of the contract itself," *Hamlet at Willow Creek Dev. Co., LLC v. Northeast Land Dev. Corp.*, 64 A.D.3d 85, 112-13 (2d Dep't 2009) (internal quotation marks and citations omitted); *cf. Filner*, 633 F.2d at 143. No such independent duty appears to exist here. In fact, in alleging that she retained "rights" to the funds, Plaintiff specifically asserts that "Defendants knowingly deprived [her] of her rights by unreasonably withholding the funds when Defendants knew they would not be completing the project *under the terms of the contract*." (Am. Compl. ¶ 20 (emphasis added).) By her own characterization, then, the Contract was the source of any "rights" that Plaintiff may have had to the money at issue. Plaintiff has not identified, and this Court does not perceive, any independent source of Plaintiff's claimed ownership rights to the funds.

Under the circumstances, Plaintiff has not adequately pleaded a claim for conversion of the money she allegedly paid to Defendants, and thus she should not be awarded any damages for such a claim.[11]

### 2.   Damages for Conversion of Money Paid

In any event, even if the Court were to find that Plaintiff has adequately pleaded a claim for conversion of the contract payments she made to Defendants, no award of damages would be warranted on such a claim, as Plaintiff has failed to demonstrate how much, if any, of the $54,000 that she paid to Defendants was used for unauthorized purposes.

Plaintiff seeks recovery of that total sum (Proposed Findings, at 7; Pl. Aff. ¶ 6), but, while she has adequately demonstrated, through documentary evidence, that she *paid* that amount,[12] she has not offered evidence sufficient to differentiate between sums misused by Defendants and sums used for legitimate purposes contemplated by the Contract.  Some of Plaintiff's payments, for example, were at least partially for Defendants' labor (*see* Design Contract, at 1 (indicating that initial payment of $10,000 was required for Defendants to start working; Pl. Aff. ¶ 5 (stating that a payment of $20,000 was, in part, for "labor")), and, while Plaintiff contends that Defendants' work was "not done to code" (Pl. Aff. ¶¶ 16-17), the only way to read that contention is that, regardless of its quality, some work on the job was indeed

---

[11] Nor has Plaintiff offered a colorable basis for a claim that Defendants converted monies she paid to *other* contractors to repair or complete the deficient work allegedly performed by Defendants.

[12] Plaintiff has documented most of her payments with copies of negotiated checks, made payable to Christo (*see* Dkt. 36-4), except for one $15,000 wire transfer payment, which she has documented with a letter from CitiBank (*id.* at 2), and one $5,000 payment that was apparently made by bank check (Pl. Aff. ¶ 6), which she has documented with a handwritten receipt (Dkt. 36-4, at 3).

performed.  Other payments, in whole or in part, were stated to be for materials (*see id.* ¶ 5

(stating that payment of $17,538 was for "initial materials," and that $20,000 was, in part, for

"additional supplies")), and it appears that Defendants did use some or all of those payments to

purchase materials for the job (*see, e.g.*, Design Contract, at 4 (indicating a bathroom sink

cabinet as one of the materials to be purchased); Contract between Dena Lenard and First

Construction Zone Inc. (Dkt. 36-14) (defining the scope of work and indicating the bathroom

cabinet and sink to have been "already purchased")).  Although Plaintiff asserts in her Proposed

Findings that Christo "retained possession of all supplies and materials purchased pursuant to the

contract" (Proposed Findings, at 5), she does not support this assertion with any statement in her

Affidavit or with any other submitted evidence.

Certainly, Plaintiff has not demonstrated, to a "reasonable certainty," that any particular

amount of money that she paid to Defendants was actually used for unauthorized purposes, as

opposed to the purposes for which payment was ostensibly given. *See Transatl. Marine Claims*

*Agency, Inc.*, 109 F.3d at 111.

For these reasons, I do not recommend that Plaintiff be awarded any damages on her

claim for conversion of monies paid to Defendants, even if the Court should find that such a

claim has been adequately pleaded.[13]

---

[13] I also do not recommend that Plaintiff be awarded any recovery for the payments she
allegedly made to First Construction Zone, Inc. and Apex Electrical Contractors, Inc., for
repairing or completing Defendants' work (*see* n.4, *supra*), as the usual measure of damages on a
claim for conversion is the value of the property wrongly used or retained *by the defendant*, *see*
*Fantis Foods*, 49 N.Y.2d at 326; *Marketxt Holdings Corp.*, 693 F. Supp. 2d at 395, and Plaintiff
has offered no support for applying any other measure in this case.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Court award Plaintiff $2,024.10 in damages as a result of Defendants' default on her repleaded claim for conversion of property.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, United States Courthouse, 40 Centre Street, Room 201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Schofield. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
March 3, 2014

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

22

Copies to:

Hon. Lorna G. Schofield, U.S.D.J.

Plaintiff's counsel (via ECF)

Design Studio, Inc.
10 Huron Avenue
Suite 16K
Jersey City, NJ  07306

Ms. Rose C. Christo
10 Huron Avenue
Suite 16K
Jersey City, NJ  07306